IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 26, 2005

## STATE OF TENNESSEE v.  JONATHAN D. TEARS

**Direct Appeal from the Circuit Court from Marshall County**
**No. 14715          Charles Lee, Judge**

---

**No. M2005-01269-CCA-R3-CD - Filed December 12, 2005**

---

A Marshall County jury convicted the Defendant of possession of .5 grams of cocaine with intent to sell, possession of .5 grams of cocaine with intent to deliver and possession of marijuana.  The trial court merged the cocaine convictions into a single conviction for possession of cocaine with intent to sell and sentenced the Defendant to twelve years for that offense and to a concurrent sentence of eleven months, twenty-nine days for possession of marijuana. On appeal, the Defendant asserts that the evidence was insufficient to support his convictions and that the trial court erred when it denied him alternative sentencing.  We find no error, thus, we affirm the judgements of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JJ., joined.

Andrew Jackson Dearing, Jr., Shelbyville, Tennessee (on appeal) and Don Himmelburg and Lance B. Mayes, Nashville, Tennessee (at trial), for the Appellant, Jonathan D. Tears.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; W. W. Michael McCown, District Attorney General; Weakley A. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**

This case arises from the Defendant's convictions for drug possession offenses.  At the Defendant's trial for these offenses, Agent Thomas Biele testified that, on the night of the offense, he was working as an undercover narcotics agent, and he and Detective Carol Jean were in Agent Biele's unmarked vehicle patrolling an area known for drug trafficking.  He said that Detective

-1-

Whitsett and other officers were also patrolling the area and had contact with Biele's vehicle through a private channel and a dispatch channel.

Agent Biele said that he saw Ron Ron Thomison, a known drug dealer, riding in the front passenger seat of a vehicle with two other black males. Agent Biele explained that he had personally made a controlled purchase of crack cocaine from Thomison in the past and had received information that Thomison was still involved in the illegal distribution of crack cocaine. Agent Biele and Detective Jean followed the vehicle. At that point, the detectives were following the vehicle without the intent of pulling it over.

Agent Biele stated that a lot of suspicious movements started happening inside the vehicle under surveillance. Then, the vehicle made a quick left turn into a Sonic parking lot. He said that he and Detective Jean drove past the Sonic parking lot and pulled into the driveway of a tobacco outlet further down the road. He testified that a Chinese restaurant stands between the tobacco store and the Sonic parking lot. He said that the vehicle they were following immediately exited the Sonic parking lot, without stopping or ordering food, turned right, and headed back in the direction from which it came. Agent Biele said that he noticed that only two people remained in the vehicle and that the back seat passenger was gone. Due to this suspicious activity, he told Detective Jean to make a traffic stop. After pulling over the vehicle, he radioed officer Whitsett and explained that an individual who had been in a vehicle was now missing in the vicinity of the Sonic parking lot. Agent Biele testified that he then searched the vehicle and its occupants, but found no illegal substances. He said that he and Detective Jean then went back to the Sonic parking lot.

On cross-examination, Agent Biele testified that he could not identify the individual in the back of the vehicle and that he never saw the vehicle stop in the Sonic parking lot. He testified that he never saw the Defendant with any cocaine or marijuana and that he never had an opportunity to speak with the Defendant.

Detective Whitsett testified that, on the night of this offense, he was working as a detective for the Lewisburg Police Department, and he rode in a vehicle with Officer Shannon Biggs and Detectives Shane Daugherty and Kevin Patin. He testified that these officers were patrolling "problem areas" with Agent Biele's vehicle, and they communicated with Agent Biele's vehicle through radio on a private channel and a dispatch channel. Detective Whitsett said that he first received a call from Agent Biele around 11:00 p.m., but, before he received Agent Biele's call, he saw somebody run from the Sonic parking lot to the rear of the neighboring Chinese restaurant. Detective Whitsett testified that, next, he turned his car into the Chinese restaurant's parking lot to look for the person who ran towards that area. Officer Whitsett did not recall hearing that a person was missing from the vehicle under surveillance. He said that he was probably exiting his vehicle when Agent Biele relayed that information. He testified that he and the other detectives started a ground search after they pulled into the Chinese restaurant's parking lot. Within a few seconds, he found the Defendant, who he immediately recognized as a known drug dealer, lying between an air conditioning unit and the back wall of the Chinese restaurant.

Detective Whitsett said that they got the Defendant up from behind the air conditioning unit, placed the Defendant in handcuffs, and searched the surrounding area. He said that, on top of the air conditioning unit, he saw a rolled up ten dollar bill, that had some marijuana coming out of it, and a bag with a significant amount of cocaine. Detective Whitsett said that he had made approximately fifty arrests for the sale of cocaine. He said that the amount of cocaine that he found was "substantial" and "in the upper bracket" of quantities of cocaine that he found when making other arrests. Detective Whitsett testified about the various ways of ingesting cocaine and said that he did not find any paraphernalia for cocaine use in the surrounding area. He picked up the cocaine and marijuana, placed them in an evidence bag, and sent them to the Tennessee Bureau of Investigation ("TBI") crime lab for analysis. He said that he asked the TBI to give a weight and a description of the drugs inside the evidence bag.

On cross-examination, Detective Whitsett said that he did not find any scales on the Defendant and that he believed that most drug dealers carry scales. He said that, when patrolling the area, before receiving the radio call from Agent Biele, he could not see behind the Chinese restaurant or its neighboring establishments. Detective Whitsett testified that, after pulling into the parking lot, a fence and tree line blocked his view on the left and the Chinese restaurant had a lateral wall that blocked his view on the right. He testified that, when he exited his vehicle, he did not hear anybody moving in between the air conditioning unit and the restaurant. Detective Whitsett said that he knew someone had to be in the general area because he had seen someone running there and that person could not have gotten out of his field of vision. Detective Whitsett testified that street lights kept the area well lit, and he found the drugs without using a flashlight. He said that the Defendant did not possess a large sum of money, a cell phone, or a pager when the officers found him. Detective Whitsett testified that he never saw the Defendant throw the drugs on top of the air conditioning unit. He testified that he did not request the Defendant to give a blood test to see if the Defendant was under the influence and did not ask for any type of analysis of the Defendant's hands to see if any cocaine residue was on them.

On re-direct examination, Detective Whitsett said that the drug dealers whom he has arrested in the past did not always carry cell phones and pagers. Detective Whitsett testified that crack cocaine is the form of cocaine mainly sold in Lewisburg and that cocaine powder is the main ingredient used for making crack cocaine. He testified that powder cocaine increases in value when turned into crack, and the value of the cocaine found near the Defendant was $1500. He said someone with this amount of cocaine would not necessarily have any money in their pockets if they were getting ready to turn the cocaine powder into crack to sell.

Detective Patin testified that he was working as a detective on the night of this offense, and he rode in a vehicle with Detective Whitsett, Officer Biggs, and Shane Daugherty. He testified that, while on patrol, Detective Whitsett said that he saw someone running towards the back of the Chinese restaurant, and then Detective Whitsett turned the vehicle into the restaurant parking lot. Detective Patin testified that he got out of the car and searched the area that surrounded the back of the Chinese restaurant. He said that he had a pretty good view of the surrounding area, but he did not see anyone. He said that, next, he heard Detective Whitsett say, "Let me see your hands. Let me

see your hands. Get up." Detective Patin turned around and headed back to the Chinese restaurant. When he arrived at the back of the restaurant, the Defendant was standing up. He testified that, after Detective Whitsett hand-cuffed the Defendant, Detective Whitsett pointed out something on top of the air conditioning unit. Detective Patin said that, when they got a closer look at the substance, they suspected that it was cocaine. He said that they also saw a ten dollar bill with marijuana in it.

On cross examination, Detective Patin said that the officers were not aware of any criminal activity when they pulled into the Chinese restaurant parking lot, but Detective Whitsett had seen someone run behind the restaurant, and they had received a call from Agent Biele stating that he was following a vehicle because he recognized one of the individuals in the car. Detective Patin said that, when he got out of the car, he did not hear any noise, he did not observe anyone selling drugs, and he did not receive any reports that anyone had sold any drugs.

Cassandra Franklin testified that she is employed with the TBI Crime Laboratory in Nashville, Tennessee. The parties stipulated that Franklin qualified as an expert in the field of forensic chemistry to testify about the identification of substances and whether or not they are controlled substances. Franklin testified that the substances submitted to her lab were determined to be 15.2 grams of cocaine and .9 grams of marijuana. On cross-examination, Franklin testified that she had not received any officer training from the police academy and that she did not perform any tests to determine the purity of the cocaine powder. She said that she could perform such purity tests, and such tests rarely showed results that a substance was 100% pure cocaine.

## II. Analysis

On appeal, the Defendant asserts that: (1) insufficient evidence was presented to support his conviction for possession of cocaine with intent to sell and possession of marijuana; and (2) the trial court erred when it denied him alternative sentencing.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence presented at trial was insufficient to sustain his conviction for possession with intent to sell cocaine, a schedule II controlled substance, and marijuana, a schedule VI controlled substance. The State contends that the evidence from the record is more than sufficient to support a conclusion, beyond a reasonable doubt, that the Defendant is guilty of both offenses. The trial court held:

> If you take any one piece of what the State has, any one piece would not be sufficient, . . . . But when you take all of those put together, and more particularly, the defendant's furtive behavior when he was discovered by the officers, then I think at least it makes a jury question.

When an accused challenges the sufficiency of the evidence, an appellate court's standard

of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In order to convict the Defendant of possession with intent to sell a schedule II controlled substance, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed "a controlled substance with intent to manufacture, deliver, or sell such controlled substance." Tenn. Code Ann. 39-17-417(a)(4) (2003). Possession may be actual or constructive. A person who knowingly has direct physical control over an object at a given time is then in actual possession of it. See 7 Tenn. Practice, Tenn. Pattern Jury Inst.-Criminal 31.04 (2002). Tennessee Code Annotated section 39-17-417(a), prohibiting the possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" Id. at 845 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted))

According to Tennessee Code Annotated Section 39-17-419 (2003), "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Thus, the jury can infer an intent to sell or dispense drugs based upon the amount of drugs possessed by the defendant and the absence of drug paraphernalia. See State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (sustaining a conviction for possession with intent to sell after the defendant had been discovered with 1.7 grams of crack cocaine on his person); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony about the amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *3 (Tenn. Crim. App., at Nashville, Oct.8, 2004), *perm. app. denied* (Tenn. May

23, 2005) (determining that the absence of drug paraphernalia, and testimony of value and amount of 3.3 grams of cocaine provided sufficient evidence for jury to draw an inference of defendant's intent to sell and deliver a controlled substance); State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *4 (Tenn. Crim. App., at Nashville, May 10, 2004), *no Tenn R. App. P. 11 application filed* (holding that the testimony about the large volume and street value of 25.5 grams of cocaine, the typical dosages for addicts, and the absence of drug paraphernalia was sufficient to support an inference and conviction of intent to deliver).

Looking at the evidence in the light most favorable to the State, the evidence presented at trial was sufficient for a rational jury to find that the Defendant was in possession of cocaine with the intent to sell and that the Defendant possessed marijuana. At trial, the evidence presented established that officers discovered the Defendant, alone, hiding behind an air conditioning unit behind a restaurant. This discovery was made in an area where an individual had just exited a vehicle containing a known drug dealer. The evidence presented also established that the officers found 15.2 grams of cocaine powder and .9 grams of marijuana lying on top of the air conditioning unit that the Defendant hid behind. The officers found no one else after searching the surrounding area, and the record contains no evidence that someone else placed the drugs near the Defendant. A reasonable jury could conclude that the evidence excluded every other reasonable hypothesis explaining the facts save that the Defendant was in the vehicle with a known drug dealer, exited the vehicle with the drugs, threw the drugs on top of the air conditioning unit, and then hid behind the air conditioning unit.

A reasonable jury could also infer that the Defendant intended to sell cocaine based on the "substantial amount" of the drug found in his possession, the testimony that the Defendant was riding in a vehicle with a known drug dealer, and the testimony that officers did not find any drug paraphernalia. The sequence of events, the Defendant's suspicious behavior, the Defendant's close proximity to a substantial amount of cocaine, and the lack of drug paraphernalia in the surrounding area provide sufficient evidence to sustain a guilty verdict for possession of a schedule II controlled substance with intent to sell and possession of a schedule VI controlled substance. Thus, the Defendant is not entitled to relief on this issue.

### B. Sentencing

The Defendant alleges that the trial court erred by refusing to consider alternatives to incarceration when sentencing the Defendant. The State contends that the Defendant did not request alternative sentencing, and the trial court acted appropriately when it did not order alternative sentencing. Specifically, the State argues that, based on the Defendant's history and the public interest, the trial court's order was appropriate and should not be disturbed on appeal. The trial court held:

> Turning to the enhancing factors, the Court finds that the State has proven beyond a reasonable doubt that the defendant does have a previous history of criminal convictions or criminal behavior in addition to those necessary to establish

the appropriate range . . . . The Court does find that the defendant has a previous history of unwillingness to comply with conditions of a sentence involving release in the community . . . . The Court finds that . . . this offense was committed while the defendant was on parole . . . . And the Court finds that the State has proven the defendant was adjudicated to have committed a delinquent act that would have constituted a felony if committed as an adult, therefore establishing beyond a reasonable doubt that enhancing factor number [21] applies . . . .

What more can the court systems in this state do to a young person [other than what] that has been done [to the Defendant?]

First, he is charged with a crime involving violence or threat of violence and the court placed him on probation after he saw the insides of a jail because I am sure because of his age.

That stint in jail apparently left no impression upon [the Defendant] because shortly after that the Court had to revoke his probation and he was committed to the Department of Correctio[n].

The inside of the penitentiary apparently left no impression upon [the Defendant] because after he was released on parole he commits this offense which resulted in his going back to the penitentiary which is enhancing factor number [14].

All of that leads up to the Court's conclusion that it is doubtful that [the Defendant] is going to ever learn anything at least until he outgrows this propensity which he seems to have for wanting to violate the law. Maybe when [the Defendant] gets to be about 40, 45 or 50 he will come to the conclusion as so many other people that have gone through this system eventually do, that it is just not worth it.

Until that time, the Court is of the conclusion that society should be protected from [the Defendant]. I am going to do the best that I can to see that he matures to the point that he is not likely to engage in criminal conduct whether it is because of his old age or otherwise.

For those reasons, the Court is going to grant the State's request in this case to give [the Defendant] the maximum sentence.

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the

review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make on his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a),(b), 103(5) (2003); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

According to Tennessee Code Annotated § 40-35-102(6) (2003), a defendant "who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). The Defendant was charged with possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, and received an effective twelve-year sentence. See Tenn. Code Ann. § 39-17-417(c)(1). Therefore, the Defendant is not presumed to be a favorable candidate for alternative sentencing.

The appropriate sentence for a Range I Class B felony is not less than eight years or more than twelve years. See Tenn. Code Ann. § 40-35-112 (2003). At sentencing, the trial court properly applied enhancement factors, finding that: (1) the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the offense in the case under submission was committed while the Defendant was on parole for the commission of a prior offense; and (3) the Defendant had previously committed a delinquent act as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(9),(14),(21) (2003). After reviewing the record, we conclude that the evidence does not preponderate against the trial court's finding that the Defendant should serve twelve years of incarceration. The evidence of the Defendant's criminal history and unwillingness to comply with conditions of a sentence involving release into the community support the trial court's decision to sentence the Defendant to twelve years of incarceration. Therefore, the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE